UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.

D-1 ERIC FINCH,

      Defendant.

_____/

Case: 2:23−cr−20630
Assigned To : Friedman, Bernard A.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 11/6/2023
Description: INFO USA V. FINCH (NA)

Violations:

18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1028B
18 U.S.C. § 1029

## **INFORMATION**

THE UNITED STATES ATTORNEY CHARGES:

## **GENERAL ALLEGATIONS**

At all times relevant to this Information:

1.     In response to the novel coronavirus disease (Covid-19) pandemic, the federal government took several steps to provide urgently needed financial assistance to the States.

2.     The Families First Coronavirus Response Act (FFCRA), which became law on March 18, 2020, provided additional flexibility for State unemployment insurance agencies and additional administrative funding to respond to the Covid-19 pandemic.

3.     The Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020, and further expanded the ability of the States to provide unemployment insurance (UI) for many workers impacted by the COVID-19 pandemic, including workers who are not ordinarily eligible for unemployment benefits.

4.     The Federal Pandemic Unemployment Compensation (FPUC) program was created under the aforementioned statutes and allowed eligible individuals who are collecting certain UI benefits, including regular unemployment compensation, to receive an additional $600 in federal benefits per week for weeks of unemployment ending on or before July 31, 2020.

5.     Additionally, the Pandemic Emergency Unemployment Compensation (PEUC) program was created and allows those who have exhausted benefits under regular unemployment compensation or other programs to receive up to 13 weeks of additional federally funded benefits. In the State of Michigan, the Unemployment Insurance system is administered by the Unemployment Insurance Agency ("MUIA"), which is part of the State of Michigan's Department of Labor and Economic Opportunity. In the State of Arizona, the UI system is administered by the Department of Economic Security ("DES"). In the state of California, the UI system is administered by the Employment Development Department ("EDD"). The U.S.

Department of Labor funds many Unemployment Insurance Agency administrative costs, including salaries, office expenses, and computer equipment.

6.      To obtain any of the above-referenced benefits, an individual must initiate a claim. The overwhelming majority of unemployment claims have been filed online through state-organized websites.  In most cases, to be eligible for unemployment benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application.  The amount of unemployment benefits that an unemployment claimant might be eligible for depends on a variety of factors, including, but not limited to, the length of his or her previous employment and the amount of wages he or she earned.  However, under the programs outlined above, certain individuals were eligible for UI benefits (or eligible for a greater amount of UI benefits) than they would be if not for various federal programs.

7.      State unemployment systems and benefits are joint state and federal enterprises largely financed by taxes on private employers located in that state. In 2020 and 2021, the federal government provided significant supplemental benefits to the states as a result of the Covid-19 pandemic. Beginning in or about March 2020 and continuing through September 4, 2021, the Families First Coronavirus Response Act; Coronavirus Aid, Relief, and Economic Security Act; and the American Rescue Plan Act of 2021 created federal programs that allowed for the significant outlay of federal funds flowing to and through the states to offset the historic need for

3

unemployment benefits by the American workforce, including in the states of Arizona, California and Michigan (and in the Eastern District of Michigan). Collectively, these benefits are often referred to as Pandemic Unemployment Assistance ("PUA").

8.      Normally (in the absence of fraud), an unemployed worker initiates an Unemployment Insurance claim. This can be accomplished by submitting a claim in person, over the telephone, or via the Internet. Currently, most Unemployment Insurance claims in Michigan, California and Arizona are filed online via the Internet through the MUIA, EDD and DES websites. When a claimant using an internet protocol ("IP") address registered in Michigan files a claim with an out-of-state UI agency, the servers used to process those claims are located outside the state of Michigan. For example, an Arizona or California UI claim filed from an IP address registered to a Michigan residence will be processed through a server located outside of the state of Michigan.

9.      The MUIA, EDD or DES will either approve or reject an Unemployment Insurance claim based on the application made by the unemployed worker. If the MUIA, EDD or DES approves an Unemployment Insurance claim, the claimant is required to re-certify the claim via telephone or Internet at various times during the life of the claim. The worker must also certify that he or she is still unemployed and actively seeking work. One way in which unemployment benefits are provided to a

4

claimant is with a debit card, issued by Bank of America ("BOA"), which is mailed to the claimant through the U.S. Postal Service.

10.     Alternatively, a claimant can provide the state Unemployment Insurance Agency with a bank routing number and bank account number so his or her Unemployment Insurance benefits can be transferred via electronic funds transfers ("EFTs") into his or her bank account. These EFTs originate from one or more accounts maintained by the state Unemployment Insurance Agency at Bank of America, N.A., which is a subsidiary of Bank of America Corporation, a bank holding and financial holding company headquartered in Charlotte, North Carolina. All EFTs of Unemployment Insurance benefits to Michigan, California or Arizona Unemployment Insurance claimants, whether via a BOA-provided debit card or via a claimant-provided bank account, involve the transmission of electronic signals through one of BOA's two data centers, which are located in Virginia and Colorado, and from those data centers to banks and/or ATMs located, for example, in Michigan. In addition, any other state that disperses Unemployment Insurance benefits using BOA prepaid debit cards, including Arizona and California, also involve the transmission of electronic signals through the aforementioned BOA data centers. These are interstate wire communications.

## COUNTS ONE THROUGH FIVE
### 18 U.S.C. § 1341 - Mail Fraud

D-1 ERIC FINCH

11.    The allegations in paragraphs 1 through 10 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

12.    Beginning on a date unknown to the United States Attorney, but at least as early as June 2020, and continuing through at least September 2020, in the Eastern District of Michigan, Southern Division, and elsewhere, Defendant ERIC FINCH, with the intent to defraud, knowingly devised and executed a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations.

13.    The purpose of the scheme and artifice to defraud was for Defendant to unlawfully obtain state and federal UI benefits.

14.    It was part of the scheme and artifice that Defendant would submit false and fraudulent UI benefit claims to the state of Michigan (and elsewhere) in the names of various individuals, without those individuals' knowledge or approval.

15.    It was further a part of the scheme and artifice that Defendant would use these individuals' social security numbers and other personally identifiable information (PII) in the course of the UI benefit claim submission process.

6

16.     It was further a part of the scheme and artifice that, for each of the submitted UI benefit claims, the Defendant would falsely certify that the purported claimant was unemployed due to Covid-19.

17.     It was further a part of the scheme and artifice that, for each of the submitted UI benefit claims, Defendant would cause BOA to mail a debit card to an address within his control. These debit cards were then loaded, electronically, with state and federal UI benefits by the MUIA, EDD or DES.

18.     It was further a part of the scheme and artifice that once Defendant obtained these debit cards, he would use them to make withdrawals from various ATMs in the Eastern District of Michigan.

19.     On or about the dates set forth below, in the Eastern District of Michigan, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, Defendant knowingly caused to be delivered by mail the following matters, with each transmission being a separate count of the information:

| Count | Approximate Date of Mailing | Nature of Mailing | Victim |
|---|---|---|---|
| 1 | June 16, 2020 | Bank of America debit card associated with Arizona UI claim | T.C. |
| 2 | June 23, 2020 | Bank of America debit card associated with Arizona UI claim | S.C. |

| 3 | July 16, 2020 | Bank of America debit card associated with California UI claim | C.H. |
| 4 | August 20, 2020 | Bank of America debit card associated with Arizona UI claim | C.H. |
| 5 | May 26, 2020 | Bank of America debit card associated with Michigan UI claim | C.B. |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS SIX THROUGH NINE
### 18 U.S.C. § 1343 – Wire Fraud

D-1 ERIC FINCH

20.     The allegations in paragraphs 1 through 10 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

21.     Beginning on a date unknown to the United States Attorney, but at least as early as June 2020, and continuing through at least September 2020, in the Eastern District of Michigan, Southern Division, and elsewhere, Defendant ERIC FINCH, with the intent to defraud, knowingly devised and executed a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations.

22.     The purpose of the scheme and artifice to defraud was for Defendant to unlawfully obtain state and federal UI benefits.

23.     It was part of the scheme and artifice that Defendant would submit false and fraudulent UI benefit claims to the state of Michigan (and elsewhere) in the names of various individuals, without those individuals' knowledge or approval.

24.     It was further a part of the scheme and artifice that Defendant would use these individuals' social security numbers and other personally identifiable information (PII) in the course of the UI benefit claim submission process.

25.     It was further a part of the scheme and artifice that, for each of the submitted UI benefit claims, the Defendant would falsely certify that the purported claimant was unemployed due to Covid-19.

26.     It was further a part of the scheme and artifice that, for each of the submitted UI benefit claims, Defendant would cause BOA to mail a debit card to an address within his control. These debit cards were then loaded, electronically, with state and federal UI benefits by the MUIA, EDD or DES.

27.     It was further a part of the scheme and artifice that once Defendant obtained these debit cards, he would use them to make withdrawals from various ATMs in the Eastern District of Michigan. On or about the dates set forth below, in the Eastern District of Michigan, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, Defendant knowingly transmitted and caused the transmission by means of wire radio, or television communication in

9

interstate or foreign commerce, the following writings, signs, signal, pictures, and sounds; with each transmission being a separate count of the information:

| Count | Date of Transaction | Nature of Wire Transmission | Victim | Amount Withdrawn |
|-------|---------------------|-----------------------------|--------|------------------|
| 6 | July 1, 2020 | Debit card transaction | S.C. | $1000 |
| 7 | July 29, 2020 | Debit card transaction | T.C. | $1000 |
| 8 | August 4, 2020 | Debit card transaction | C.H. | $1000 |
| 9 | September 12, 2020 | Debit card transaction | C.H. | $1000 |

All in violation of Title 18, United States Code, Section 1343.

### COUNTS TEN AND ELEVEN
### 18 U.S.C. § 1028A(a)(1)
### Aggravated Identity Fraud

D-1 ERIC FINCH

28.    The allegations in paragraphs 1 through 10 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

29.    On or about the dates listed below, in the Eastern District of Michigan, Southern Division, and elsewhere, Defendant ERIC FINCH, knowingly possessed, used and transferred, without lawful authority, one or more means of identification of another person—that is, names and Social Security Numbers—during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: Wire

Fraud, in violation of 18 U.S.C § 1343, knowing that the means of identification

belonged to another actual person:

| <u>Count</u> | <u>Date of Use</u> | <u>Nature of Use</u> | <u>Victim</u> |
|---|---|---|---|
| 10 | June 14, 2020 | Application for California UI benefits | C.H. |
| 11 | June 15, 2020 | Application for Arizona UI benefits | S.C. |

30.     All in violation of Title 18, United States Code, Section 1028A(a)(1).

## <u>COUNT TWELVE</u>
### 18 U.S.C. § 1029(a)(5)
### Illegal Transactions with Access Devices

D-1 ERIC FINCH

31.     The allegations in paragraphs 1 through 10 are hereby repeated, realleged, and

incorporated by reference as if fully set forth herein.

32.     In or around the months of June, July, August and September 2020, in the

Eastern District of Michigan, Defendant ERIC FINCH, knowingly, and with intent

to defraud, effected transactions with access devices issued to other persons, i.e., 9

fraudulent U.S. Bank debit cards issued by the states of Michigan, Arizona and

California in the names of various individuals, and did so to unlawfully obtain state

and federal unemployment insurance benefits in the name of those individuals.

33.     Within the one-year period between June and October 1, 2020,  Defendant obtained more than $1,000 by way of such transactions.

34.     The aforementioned conduct affected interstate commerce, in that the origin of the funds withdrawn from the cards (in Michigan) were deposit transactions initiated by the Arizona Department of Economic Security ("DES") and the California Employment Development Department ("EDD"); likewise, US Bank mailed the debit cards, in the names of each of the 9 UI benefit claimants, to addresses within the Defendant's control in Michigan.

35.     All in violation of 18 U.S.C. § 1029(a)(5) and (c)(1)(B).

## FORFEITURE ALLEGATIONS

36.     The allegations set forth in Counts One thru Twelve of this Information are hereby incorporated by reference for purposes of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 982(a)(2)(B), and Title 18, United States Code, Section 1029(c)(1)(C).

37.     As a result of the forgoing violations of Title 18, United States Code, Section 1341, as charged in Counts One through Five of this Information, the Defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, any proceeds obtained, directly or indirectly, as a result of such

violation(s), pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c).

38.    As a result of the forgoing violations of Title 18, United States Code, Section 1343, as charged in Counts Six through Nine of this Information, the Defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, any proceeds obtained, directly or indirectly, as a result of such violation(s), pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c).

33.    As a result of the forgoing violation of Title 18, United States Code, Section 1029(a)(5), the Defendant shall forfeit to the United States any property constituting, or derived from, proceeds he obtained directly or indirectly as a result of such violation, and any personal property used or intended to be used to commit the offense, pursuant to Title 18, United States Code, Section 982(a)(2)(B) and Title 18, United States Code, Section 1029(c)(1)(C).

39.    <u>Substitute Assets</u>:   If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

        a.   Cannot be located upon the exercise of due diligence;

        b.   Has been transferred or sold to, or deposited with, a third party;

        c.   Has been placed beyond the jurisdiction of the Court;

        d.   Has been substantially diminished in value; or

    e.  Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

40.  <u>Money Judgment</u>:  Upon conviction of the violations alleged in Counts 1-11of this Information, the United States will seek a forfeiture money judgment against the Defendant in an amount equal to the total amount of proceeds he obtained as a result of his violations.

Dated: 11/06/2023

DAWN N. ISON
United States Attorney

<u>s/A. Tare Wigod</u>
A. TARE WIGOD
Deputy Chief,
Violent and Organized Crime Unit

<u>s/Eric Straus</u>
ERIC STRAUS
Assistant U.S. Attorney

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>2:23−cr−20630 |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| Companion Case Information | Companion Case Number: 23-20519 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)[1]**: | Judge Assigned:  Terrence G. Berg |
| ☒ Yes          ☐ No | AUSA's Initials:s/ES |

**Case Title:** USA v.  Eric Finch

**County where offense occurred :**  Wayne

**Check One:**     ☒ **Felony**               ☐ **Misdemeanor**               ☐ **Petty**

\_\_\_\_Indictment/\_\_\_\_Information --- **no** prior complaint.
\_\_\_\_Indictment/\_\_✓\_Information --- based upon prior complaint [**Case number:** 22-mj-30379            ]
\_\_\_\_Indictment/\_\_\_\_Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____          **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

November 6, 2023
Date

s/Eric Straus

Eric Straus
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313 226-9648
Fax:    313 226-2311
E-Mail address: Eric.Straus@usdoj.gov
Attorney Bar #:  P38266

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.